UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DAITIMA CHANDLER,

              Plaintiff,

        – against –

THE CITY OF NEW YORK,
THE NEW YORK CITY POLICE DEPARTMENT,
POLICE OFFICER CARLOS MEDINA,
POLICE OFFICER ARNALDO SANTANA,
SERGEANT SASHA ROSEN, and
SEVERAL UNIDENTIFIED POLICE OFFICERS
OF THE NEW YORK CITY POLICE
DEPARTMENT,

              Defendants.
-------------------------------------------------------------------X

Case No. 1:12-cv-05161(JMF)

ECF CASE

**AMENDED COMPLAINT**

Plaintiff DAITIMA CHANDLER, by her attorneys BOWMAN & VLACHOS, complaining of defendants, hereby alleges the following, upon information and belief:

## JURISDICTION AND PARTIES

1.      This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States as well as the laws of the State of New York.

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331(a) and 1343(a).

3.      Plaintiff DAITIMA CHANDLER is a resident of the State of New York, City of New York, County of Bronx.

4.      Defendant SERGEANT SASHA ROSEN, at all times relevant, was and is a police officer employed by the City of New York, and, on information and belief, is a resident of the City and State of New York.

5. Defendant POLICE OFFICER CARLOS MEDINA, at all times relevant, was and is a police officer employed by the City of New York, and, on information and belief, is a resident of the City and State of New York.

6. Defendant POLICE OFFICER ARNALDO SANTANA, at all times relevant, was and is a police officer employed by the City of New York, and, on information and belief, is a resident of the City and State of New York.

7. The defendant City of New York is a municipal corporation organized under the laws of the State of New York.

8. The defendant New York City Police Department is a municipal entity consisting of sworn police officers charged with protecting citizens from threats to their safety and otherwise ensuring a peaceful and orderly society.

## FACTUAL BACKGROUND

9. At all times relevant to the allegations set forth below, Defendants acted under color of law.

10. On August 15, 2009, at or around 7:15 p.m., Plaintiff was preparing to leave Orchard Beach with her family, including her minor children, by waiting in line for a bus. When Plaintiff became separated from her son, then two years of age, she approached Defendant Police Officer Carlos Medina and asked for assistance. Defendant Medina was unresponsive to Plaintiff's initial request for help in locating her child.

11. Plaintiff attempted to get Defendant Medina's attention by saying "Hello?", to which Defendant Medina responded "My name is not 'Hello'."

12. As a result of this rude interaction, Plaintiff withdrew her request for help, and turned away from Defendant Medina. Upon turning her back toward him, Defendant Medina grabbed Plaintiff's right forearm with his left hand.

13.    When Plaintiff resisted and attempted to move her arm away, Defendant Medina punched Plaintiff in the left eye with a closed fist.

14.    Defendant Medina pushed Plaintiff up against the gate leading to the bus depot, and subsequently pushed her down into a puddle on the sidewalk.

15.    While Plaintiff lay prone on the ground, several other police officers, including Defendant Santana, arrived on the scene in an effort to arrest Plaintiff, despite her repeated protests that she was merely asking Defendant Medina for help.  These unidentified police officers thereby caused the assault and battery and false arrest, and/or failed to intervene to prevent the same.  As a result of these actions, Plaintiff was publicly humiliated.  In addition to the crowd of bystanders who observed this incident, plaintiff was greatly distressed that her minor children witnessed such unwarranted brutality.  On information and belief, defendant Santana was the arresting officer.

16.    Plaintiff was transported via squad car to the small police station next to Orchard Beach, where she was handcuffed to a wall.

17.    While being held at the Orchard Beach police station, Plaintiff was verbally abused by Defendant Sergeant Sasha Rosen. Defendant Rosen disparaged Plaintiff by asserting, *inter alia*, that she is a "crackhead" and "prostitute" and that she uses other illegal drugs. Each of these statements was false.

18.    Plaintiff was then transferred to the 43rd Precinct where she was placed in a holding cell.

19.    Approximately one hour later, Plaintiff began to feel nauseous. Plaintiff requested medical attention, and was transported via ambulance, shackled, to nearby Jacobi Hospital.

20.    Upon initial admission to Jacobi Hospital, Plaintiff was treated with intravenous fluids to alleviate her nausea. Plaintiff's left eye was also examined but did not require treatment at that time. Plaintiff was returned to the 43rd Precinct, where she was held overnight. From the time of her assault, plaintiff was clad only in a bathing suit top and shorts, having on no underpants or shoes.

21.    The next day, on the morning of August 16, 2009, Plaintiff began vomiting bile and returned to Jacobi Hospital. Plaintiff remained hospitalized until the following day, August 17, 2009. At those times plaintiff was hospitalized, she was not permitted to use the bathroom, and was toileted with a bedpan.

22.    After discharge from Jacobi Hospital, Plaintiff was taken to Bronx Central Booking. Plaintiff was held in a cell for approximately two hours before she was brought before a judge and charged with assaulting a police officer. Prior to this time, Plaintiff had not been informed that she was under arrest, nor read her Miranda rights.

23.    Plaintiff received additional treatment for injuries to her eye from Dr. Rozelle Francis of the St. Barnabas Hospital retina clinic, on or about September 29, 2009.

24.    For approximately two years subsequent to her false arrest, Plaintiff was required to attend numerous appearances in criminal court, including while she was pregnant, and consistently threatened with prolonged incarceration., through the time of her disposition on or around April 13, 2011.

25.    The wrongful, unlawful, intentional, grossly negligent, and wanton conduct described herein was without justification privilege, probable cause, or reasonable suspicion. This conduct also included the use of force which was unprovoked, unjustified, and

disproportionate to the circumstances under which Plaintiff came into contact with Defendant Medina and the other unidentified police officers.

26.     The wrongful, unlawful, intentional, grossly negligent, and wanton conduct described herein was committed by Defendant members of Defendant New York City Police Department, who are agents, servants, and employees of Defendant City of New York. Defendant New York City Police Department and/or Defendant City of New York engaged in various wrongful acts, including but not limited to: negligent hiring, training, discipline, supervision, and retention of the aforesaid named and unidentified police officers who, upon information and belief, are unfit for employment as police officers; the policy, practice, or custom of racial profiling and detention; the policy, practice, or custom of effectuating arrests of minorities without legal justification, privilege, probable cause, or reasonable suspicion; the policy, practice, or custom of pressuring police officer employees to make arrests in order to prove acceptable job performance; and the perpetuation of a "broken windows theory" which these government entity Defendants knew or should have known would have resulted in arrests without legal justification, privilege, probable cause, or reasonable suspicion.

27.     As a direct and proximate result of Defendants' wrongful acts described herein, Plaintiff suffered personal injuries including civil rights violations, false arrest, false imprisonment, abuse of authority, assault, battery, excessive force, intentional infliction of emotional harm, violations of the Constitution of the United States including the Fourth and Fourteenth Amendment, emotional distress, fear, anxiety, humiliation, medical expenses, malicious prosecution, multiple criminal court appearances, verbal abuse, physical abuse (including but not limited to being punched, pushed to the ground, and handcuffed to a wall), hospitalization, a black eye, bruises to (among other bodily areas) her left arm, swelling, trauma

and pain to her chest, back, arms, and head, nausea, vomiting,  extensive pain and suffering, loss

of enjoyment of life, lost earnings and job opportunities, fear of going outside, fear of the police,

post-traumatic stress, fear that the police would come to her home, and the need to wear

sunglasses for months to mask her injuries.  (See annexed photographs, certificate of disposition,

criminal appearance menu appearance history, hospital records, CCRB correspondence, and

other documentation.)

### FIRST COUNT AGAINST ALL DEFENDANTS
(Civil Rights Violations under 42 U.S.C. § 1983)

28.    Plaintiff restates and realleges each and every foregoing statement as if fully set

forth at length.

29.    The intentional, negligent, grossly negligent, wanton, and reckless conduct, acts,

and omissions of the Defendants described above, including but not limited to Plaintiff's false

arrest, use of excessive force, false imprisonment, and malicious prosecution, amount to a

deprivation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution

of the United States of America.

30.    At all times, the intentional, negligent, grossly negligent, wanton, and reckless

conduct, acts, and omissions of the Defendants described above were committed under the color

of law.

31.    As a direct and proximate result of the intentional, negligent, grossly negligent,

wanton, and reckless conduct, acts, and omissions of the Defendants, Plaintiff suffered extensive

personal injuries described above.

32.    By reason of the aforesaid, Plaintiff is entitled to compensatory money damages

and punitive damages as against the individual defendants.

WHEREFORE, Plaintiff demands judgment in the amount of $2,000,000.00 in compensatory damages of each Defendant jointly and severally, and in the amount of $2,000,000.00 in punitive damages, together with costs, disbursements, and attorney's fees.

Dated: New York, New York
      August 6, 2012

By:         _____
          DANA VLACHOS
          BOWMAN & VLACHOS
          *Attorneys for Plaintiff*
          575 Madison Avenue, 10th Floor
          New York, New York 10022

### JURY DEMAND

Plaintiff hereby demands a trial by Jury.

_____
        DANA VLACHOS